No. 23-5248

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

JOHN DOE #1, ET AL.,

*Plaintiffs-Appellees,*

v.

WILLIAM B. LEE, ET AL.,

*Defendants-Appellants.*

On appeal from the United States District Court
for the Middle District of Tennessee
No. 3:21-cv-590

## Appellants' Reply Brief

Jonathan Skrmetti
  *Attorney General & Reporter*

Andrée Sophia Blumstein
  *Solicitor General*

Gabriel Krimm
  *Assistant Solicitor General*

State of Tennessee
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
Gabriel.Krimm@ag.tn.gov
(615) 532-5596
*Counsel for Governor Lee*
  *& Director Rausch*

# TABLE OF CONTENTS

Table of Authorities.................................................................................ii

Introduction..........................................................................................1

Argument..............................................................................................1

I.  The district court overstepped its narrow jurisdiction to adjudicate the Offenders' claims. ...........................................1

    A.  Governor Lee does not belong in this lawsuit. ...........................2

    B.  The district court had only limited jurisdiction to keep Director Rausch from taking unconstitutional action. ...............7

II.  Tennessee's sex offender regulations do not violate the *Ex Post Facto* Clause. ...................................................................9

    A.  The *Ex Post Facto* Clause applies to individual legislative acts, not whole chapters of code. ........................................10

    B.  Binding and persuasive precedent supports the Tennessee legislature's enactments. ..........................................................15

III.  The district court erred by granting improper relief. ......................20

    A.  The sweeping injunction did more than necessary or equitable to remedy the Offenders' injuries..............................21

    B.  The district court's declaratory judgment is an inequitable advisory opinion........................................................................27

Conclusion ............................................................................................31

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ACLU of Nev. v. Masto*,
  670 F.3d 1046 (9th Cir. 2012) ............................................................... 65

*Alemite Mfg. Corp. v. Staff*,
  42 F.2d 832 (2d Cir. 1930), ...................................................................... 1

*Allied Artists Picture Corp. v. Rhodes*,
  679 F.2d 656 (6th Cir. 1982) ..................................................................... 7

*Ass'n of Am. Physicians & Surgeons v. FDA*,
  13 F.4th 531 (6th Cir. 2021) ................................................................. 3, 5

*Barachokov v. Davis*,
  580 F. App'x 288 (6th Cir. 2014) ........................................................... 11

*Berrios v. United States*,
  126 F.3d 430 (2d Cir. 1997) ................................................................... 27

*Block v. Canepa*,
  74 F.4th 400 (6th Cir. 2023) .................................................................... 6

*Carr v. State ex rel. Armour*,
  265 S.W.2d 556 (Tenn. 1954) ................................................................. 49

*Cent. Va. Cmty. Coll. v. Katz*,
  546 U.S. 356 (2006) ................................................................................ 38

*City of Austin v. Paxton*,
  943 F.3d 993 (5th Cir. 2019) .................................................................. 17

*Clark v. Gwyn*,
  No. M2018-00655-COA-R3-CV, 2019 WL 1568666 (Tenn. Ct. App.
  Apr. 11, 2019) ........................................................................................ 39

*Collins v. Youngblood*,
  497 U.S. 37 (1990) ................................................................................. 20

*Cutshall v. Sundquist,*
  193 F.3d 466 (6th Cir. 1999) ................................................................. 28

*Dobbert v. Florida,*
  432 U.S. 282 (1977) ................................................................... 25, 26

*Doe v. Bredesen,*
  507 F.3d 998 (6th Cir. 2007) ........................................................... 28, 40

*Doe v. Cuomo,*
  755 F.3d 105 (2d Cir. 2014) ............................................................... 64

*Doe v. DeWine,*
  910 F.3d 842 (6th Cir. 2018) ............................................................. 18

*Doe v. Miller,*
  405 F.3d 700 (8th Cir. 2005) ............................................................. 65

*Doe v. Moore,*
  410 F.3d 1337 (11th Cir. 2005) ........................................................... 10

*Doe v. Settle,*
  24 F.4th 932 (4th Cir. 2022) ......................................................... 41, 63

*Does #1–5 v. Snyder,*
  834 F.3d 696 (6th Cir. 2016) ..................................................... *passim*

*Does #1–9 v. Lee,*
  --- F. Supp. 3d ---, 2023 WL 2335639 (M.D. Tenn. 2023) ............. 47, 50

*E.B. v. Verniero,*
  119 F.3d 1077 (3d Cir. 1997) ......................................................... 36, 65

*Edelman v. Jordan,*
  415 U.S. 651 (1974) ...................................................................... 8, 9

*FCC v. Beach Commc'ns, Inc.,*
  508 U.S. 307 (1993) ...................................................................... 42

*Femedeer v. Haun,*
  227 F.3d 1244 (10th Cir. 2000) ........................................................... 36

*Friends of Georges, Inc. v. Mulroy*,
  --- F. Supp. 3d ---, 2023 WL 3790583 (W.D. Tenn. 2023) ...................61

*Gibson Cnty. Special Sch. Dist. v. Palmer*,
  691 S.W.2d 544 (Tenn. 1985) ..............................................................44

*Golden State Bottling Co. v. NLRB*,
  414 U.S. 168 (1973) ............................................................................56

*Havens v. James*,
  --- F.4th ---, 2023 WL 4982318 (2d Cir. 2023) .........................56, 57, 58

*Henderson v. Scott*,
  260 F.3d 1213 (10th Cir. 2001) ...........................................................26

*Hill v. Blind Industries & Services*,
  179 F.3d 754 (9th Cir. 1999) ........................................................7, 8, 9

*Hope v. Commissioner*,
  9 F.4th 513 (7th Cir. 2021) ........................................................ *passim*

*Hunter v. Conner*,
  277 S.W. 71 (Tenn. 1925) ....................................................................43

*Digital Media Sols., LLC v. S. Univ. of Ohio*,
  *LLC*, 59 F.4th 772 (6th Cir. 2023) ......................................................43

*In re Swanson*,
  2 S.W.3d 180 (Tenn. 1999) ..................................................................46

*Jacobson v. Fla. Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020) ......................................................57, 59

*Kallstrom v. City of Columbus*,
  136 F.3d 1055 (6th Cir. 1998) ............................................................45

*Keaton v. State*,
  372 S.W.2d 163 (Tenn. 1963) .........................................................22, 23

*Kerr ex rel. Kerr v. Commissioner*,
  874 F.3d 926 (6th Cir. 2017) ..............................................................30

*Knop v. Johnson*,
   977 F.2d 996 (6th Cir. 1992) ................................................................ 52

*Koch v. Village of Hartland*,
   43 F.4th 747 (7th Cir. 2022) ............................................................... 31

*Ku v. Tennessee*,
   322 F.3d 431 (6th Cir. 2003) ................................................................ 7

*Levin v. Tiber Holding Corp.*,
   277 F.3d 243 (2d Cir. 2002) ......................................................... 57, 58

*Lewis v. Scott*,
   28 F.4th 659 (5th Cir. 2022) ............................................................... 16

*Lombardo v. Pa. Dep't of Pub. Welfare*,
   540 F.3d 190 (3d Cir. 2008) ............................................................... 11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................. 4

*McFarland v. Henderson*,
   307 F.3d 402 (6th Cir. 2002) .............................................................. 30

*McGuire v. Marshall*,
   50 F.4th 986 (11th Cir. 2022) ....................................................... 34, 63

*Mi Familia Vota v. Abbott*,
   977 F.3d 461 (5th Cir. 2020) .............................................................. 17

*Millard v. Camper*,
   971 F.3d 1174 (10th Cir. 2020) .................................................... 34, 64

*Moore v. Fowinkle*,
   512 F.2d 629 (6th Cir. 1975) ........................................................ 44, 49

*Muskrat v. United States*,
   219 U.S. 346 (1911) ........................................................................... 60

*Nemir v. Mitsubishi Motors Corp.*,
   381 F.3d 540 (6th Cir. 2004) .............................................................. 67

*OCA-Greater Hous. v. Texas,*
    867 F.3d 604 (5th Cir. 2017) ................................................................. 51

*Patsy v. Bd. of Regents,*
    457 U.S. 496 (1982) ................................................................. 10, 13, 14

*Popovich v. Cuyahoga Cnty. Ct. of Common Pleas,*
    227 F.3d 627 (6th Cir. 2000) ................................................................. 12

*R.K. ex rel. J.K. v. Lee,*
    53 F.4th 995 (6th Cir. 2022) ................................................................. 4, 5

*Regal Knitwear Co. v. NLRB,*
    324 U.S. 9 (1945) ................................................................. 58, 62

*Richards v. Jefferson Cnty.,*
    517 U.S. 793 (1996) ................................................................. 56

*Rinard v. Luoma,*
    440 F.3d 361 (6th Cir. 2006) ................................................................. 66

*Russell v. Lundergan-Grimes,*
    784 F.3d 1037 (6th Cir. 2015) ................................................................. 6

*S. Oh. Coal Co. v. United Mine Workers of Am.,*
    551 F.2d 695 (6th Cir. 1977) ................................................................. 51

*Seling v. Young,*
    531 U.S. 250 (2001) ................................................................. 21

*Shaw v. Patton,*
    823 F.3d 556 (10th Cir. 2016) ................................................................. 35

*Smith v. Doe,*
    538 U.S. 84 (2003) ................................................................. 34, 35, 40

*State v. Crank,*
    468 S.W.3d 15 (Tenn. 2015) ................................................................. 44, 46

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency,*
    535 U.S. 302 (2002) ................................................................. 32

*Tex. All. for Retired Ams. v. Scott*,
    28 F.4th 669 (5th Cir. 2022) .................................................. 16, 17, 19

*Tex. Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020) .............................................................. 16

*Tiwari v. Friedlander*,
    26 F.4th 355 (6th Cir. 2022) ........................................................ 41, 42

*Union Pac. R. Co. v. La. Pub. Serv. Comm'n*,
    662 F.3d 336 (5th Cir. 2011) .............................................................. 10

*United States v. Miller*,
    34 F.4th 500 (6th Cir. 2022) .............................................................. 38

*United States v. Parks*,
    698 F.3d 1 (1st Cir. 2012) .................................................................. 64

*United States v. W.B.H.*,
    664 F.3d 848 (11th Cir. 2011) .......................................................... 35

*Universal Life Church Monastery Storehouse v. Nabors*,
    35 F.4th 1021 (6th Cir. 2022) .............................................................. 5

*Vartelas v. Holder*,
    566 U.S. 257 (2012) ...................................................................... 31, 33

*Vitolo v. Guzman*,
    999 F.3d 353 (6th Cir. 2021) .............................................................. 53

*Vollmer v. City of Memphis*,
    730 S.W.2d 619 (Tenn. 1987) .................................................. 29, 46, 48

*Vooys v. Bentley*,
    901 F.3d 172 (3d Cir. 2018) .............................................................. 65

*Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*,
    776 F.3d 1 (D.C. Cir. 2015) .......................................................... 55, 62

*Weaver v. Graham*,
    450 U.S. 24 (1981) .................................................................. 29, 31, 32

*Weinberger v. Romero–Barcelo,*
    456 U.S. 305 (1982) ................................................................ 54

*Whole Woman's Health v. Jackson* (*Whole Woman's II*),
    142 S. Ct. 522 (2021) ............................................ 1, 12, 15, 60

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ............................................................ 53, 54

## Constitutional Provision

U.S. Const. art. I, § 10, cl. 1 ................................................ 20, 45

## Code Provisions

Tenn. Code Ann. § 8-6-101 ........................................................ 2

Tenn. Code Ann. § 8-7-102 ........................................................ 2

Tenn. Code Ann. § 8-7-103 ....................................................... 59

Tenn. Code Ann. § 8-47-101 .................................................... 2, 3

Tenn. Code Ann. § 8-47-109 ....................................................... 3

Tenn. Code Ann. § 8-47-118 ....................................................... 2

Tenn. Code Ann. § 8-47-119 ....................................................... 2

Tenn. Code Ann. § 8-47-120 ....................................................... 2

Tenn. Code Ann. § 40-39-208 .................................................... 61

Tenn. Code Ann. § 40-39-215 ........................................... 23, 24, 48

Tenn. Code Ann. § 55-50-331 .................................................... 52

## Court Rules

Fed. R. Civ. P. 65(d)(2) ........................................................ 27, 28

## Session Laws

2008 Tenn. Pub. Acts ch. 1164 ........................................ 23, 48, 49

2022 Tenn. Pub. Acts ch. 1058…………………………………………………24

2023 Tenn. Pub. Acts ch. 49………………………………………..……..23

**INTRODUCTION**

The Response fails to justify affirming the judgment below.  Like the district court, the Offenders do not view this lawsuit as challenging the "unlawful actions" of the "named defendants," or even a particular statute granting those defendants state power.  *Whole Woman's Health v. Jackson* (*Whole Woman's II*), 142 S. Ct. 522, 535 (2021).  Instead, they see this suit as a way to "enjoin the world at large," *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930), from enforcing any part of a "regulatory scheme" comprising numerous statutes passed over several decades, Resp. 27; *see id.* 4–13.  The district court had no power to grant such relief, *see* Open. Arg. Part I; no basis in substantive law, *see id.* Arg. Part II; and no valid justification for the orders it ultimately issued, *see id.* Arg. Part III.  The Offenders' arguments to the contrary lack merit.

**ARGUMENT**

**I.   The district court overstepped its narrow jurisdiction to adjudicate the Offenders' claims.**

The district court's narrow jurisdiction should have limited the scope of this lawsuit.  *See* Open. 19–31.  The Offenders do not dispute the basics, but they claim the Governor can control other state actors by attempting to "oust" them from office, *see* Resp. 30–36, and they try to

1

bootstrap Director Rausch's discrete powers into sweeping judicial review, *see id.* at 36–39.  Precedent forecloses those arguments.

## A.    Governor Lee does not belong in this lawsuit.

The Offenders attempt to overcome their standing and sovereign immunity issues by invoking Governor Lee's "ouster" authority.  *See* Resp. 31 (standing); *id.* at 35 (sovereign immunity).  They do not cite supporting precedent because nothing supports that idea.

To be sure, Tennessee law generally subjects "[e]very person holding any office of [public] trust" to "ouste[r] from such office" for "knowing[] or willful[] neglect [of] duty."  Tenn. Code Ann. § 8-47-101.  But that does not give the Governor power to "compel" anyone to do anything.  Resp. 31.  Instead, he must ask state attorneys "to institute and prosecute" ouster proceedings.  Tenn. Code Ann. § 8-47-109.  And even that can only get him so far because those attorneys hold office independently, *see id.* §§ 8-6-101, 8-7-102, and they cannot guarantee an ouster anyway, *see id.* §§ 8-47-118, -119, -120.

This chain of events is too attenuated to cause the Offenders' injuries.  A plaintiff's standing to sue a defendant turns on the plaintiff "suffer[ing] (or [expecting] to suffer) a[n] . . . injury from [that] defendant's

conduct." *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543 (6th Cir. 2021). "In cases where the . . . injury 'depends on the unfettered choices [of] independent actors,'" the plaintiff must "'adduce facts showing that those choices have been or will be made . . . to produce causation and . . . redressability.'" *R.K. ex rel. J.K. v. Lee*, 53 F.4th 995, 999 (6th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)).

Against that backdrop, the Governor's ouster power at best resembles his "obligation to ensure . . . the state's laws are faithfully executed." *Id.* In both instances, the power can only stand-in "for harm that would be caused by other" parties. *Am. Physicians*, 13 F.4th at 547. Its efficacy depends on the independent actions of nonparty officials. If the Offenders have standing to bring claims against the Governor on their "ouster" theory here, that theory would have to hold in practically any challenge to state action. This Court's precedents do not allow that maneuver. *See R.K.*, 53 F.4th at 998–1001; *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031–32 (6th Cir. 2022).

Assuming away the standing issue, the "ouster" theory would still fail to evade the Governor's sovereign immunity. This Court constantly reminds litigants that "[t]he *Ex parte Young* exception 'does not apply

3

when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute.'" *Block v. Canepa*, 74 F.4th 400, 406 (6th Cir. 2023) (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015)).  The Offenders do not dispute Governor Lee lacks enforcement authority under Tennessee's sex offender regulations.  *See* Resp. 35.  Nor have they ever challenged the Governor's use or disuse of the "ouster" power itself.  *See id.*  So long as the ordinary rules of *Ex parte Young* apply, the Governor should not be in this suit.

Neither *Ku v. Tennessee*, 322 F.3d 431 (6th Cir. 2003) nor *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656 (6th Cir. 1982), change that outcome.  Regarding *Ku*, the Response essentially parrots the Ninth Circuit's analysis in *Hill v. Blind Industries & Services*, 179 F.3d 754 (9th Cir. 1999), *amended upon denial of reh'g*, 201 F.3d 1186, which downplays *Edelman v. Jordan*, 415 U.S. 651 (1974), by calling its waiver analysis "dicta," *see* Resp. 33.  But *Hill* has not persuaded other circuits; it should not persuade this Court.

Like the Offenders, *Hill* characterized *Edelman* as reaching an unpresented issue when it proclaimed that state sovereign immunity "need not be raised in the trial court."  179 F.3d at 761 (quoting 415 U.S. at

4

678). *Hill* reached that conclusion upon reasoning that *Edelman*'s plain-tiffs had themselves forfeited the waiver issue by failing to raise it below. *See id.* But the fact remains that *Edelman* addressed and rejected the idea that state sovereign immunity had been waived, *see* 415 U.S. at 677–78, which is why so many other circuits continue to treat *Edelman* as good law, *see Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 342 (5th Cir. 2011) (collecting circuit cases); *see also Doe v. Moore*, 410 F.3d 1337, 1349 (11th Cir. 2005) (citing *Patsy v. Bd. of Regents*, 457 U.S. 496, 515 n.19 (1982)).

None of those cases rejects the principle "that sovereign immunity is . . . waivable." Resp. 33. On the contrary, the cases accept the possibility of waiver but stress that it requires "a clear declaration that [the State] intends to submit itself to federal court jurisdiction." *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 196 (3d Cir. 2008). Where, as here, the defendant "raise[s] . . . sovereign immunity" while "answer[ing] the complaint" but declines to put it forward in an "initial summary-judg-ment brief," the record lacks that "clear[] indicat[ion of] consent to federal jurisdiction." *Barachokov v. Davis*, 580 F. App'x 288, 300 (6th Cir. 2014); *see* Ans., R.67 at 602; Ans., R.68 at 614; Ans., R.70 at 636; Ans., R.71 at

649; Ans., R.72 at 660; Ans., R.73 at 672; Ans., R.74 at 684; Ans., R.97 at 791. In that circumstance, this Court at least retains "*discretion* to hear a late [sovereign immunity] defense," *Popovich v. Cuyahoga Cnty. Ct. of Common Pleas*, 227 F.3d 627, 632 (6th Cir. 2000), *vacated upon grant of reh'g en banc*, *but implicitly reaff'd*, 276 F.3d 808, 811–12 (6th Cir. 2002), if not a duty to reach and decide the issue.

As for *Allied Artists*, the Offenders fail to resuscitate that dated precedent in the wake of *Whole Woman's Health v. Jackson* (*Whole Woman's II*), 142 S. Ct. 522 (2021). Time and again, the Offenders stress that *Whole Woman's II* concerned a statute "designed to prevent" pre-enforcement constitutional challenge. Resp. 36 (emphasis omitted). But that does not mean the Supreme Court limited its *Young* analysis to that "unusual" underlying circumstance. *Id.*

On the contrary, the Court explained how its decision followed not from the peculiarities of Texas law, but from "[g]eneral[]" principles of "sovereign immunity" and "traditional equity practice." 142 S. Ct. at 532. In line with those principles, a court can only "enjoin [a state officer] from taking specified unlawful actions" pursuant to his own "enforcement authority." *Id.* at 534–35. Indeed, considering *Whole Woman's II* was

6

allowed to proceed "against some of the . . . defendants but not others," it would make little sense for this analysis to apply only when no state officer has any challengeable enforcement authority.  *Id.* at 530.

The bottom line is that *Young* allows federal courts to review a state officer's exercise of *his* government power.  *Id.* at 535.  Governor Lee has no relevant power here.  Open. 26.  He does not belong in this suit.

### B.    The district court had only limited jurisdiction to keep Director Rausch from taking unconstitutional action.

The Offenders next concede that the law mainly empowers Director Rausch to "collect[]" and "publish[]" information, yet still they press for judicial review of rules Director Rausch does not implement.  Resp. 37.  The boundaries of *Ex parte Young* should have prohibited such review.

A thin but critical line separates the statutory provisions the district court may consider from those it may deem unconstitutional.  Under *Ex parte Young*, the Offenders can get a "judicial order[] . . . preventing" Director Rausch "from enforcing" the publication rules in his ambit.  *Whole Woman's II*, 142 S. Ct. at 532.  They can justify that order by proving the enactments creating those publication rules were "contrary to federal law."  *Id.*  And in attempting to make that showing, they can argue

those same enactments imposed retroactive punishment when considered alongside pre-existing regulations. *See infra* Arg. Part II.A.

But the Offenders cannot sue Director Rausch to prevent *other* officers from enforcing the registration and child-access rules. *Young* is not a scatter shot; it applies "provision-by-provision." *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020)). In this case, the laws creating the registration and child-access rules task Tennessee's district attorneys with enforcing those rules through prosecutions. *See* Open. 30. The Offenders' decision to sue "a different [state] official" should thus "end[]" the "*Young* analysis," at least as applied to those rules. *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022) (quoting *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019)). Although Director Rausch can properly defend his own enforcement of the publication rules, he "is not [the] proper defendant" for a challenge to the other regulations. *Texas Alliance*, 28 F.4th at 673 (quoting *Mi Familia Vota v. Abbott*, 977 F.3d 461, 468 (5th Cir. 2020)).

The Offenders cannot cure this problem by invoking *Doe v. DeWine*, 910 F.3d 842 (6th Cir. 2018). *DeWine* concerned a challenge to state sex-

offender regulations, but the state-level defendants claimed *complete* immunity from suit. *See id.* at 848. The court rejected that sweeping assertion because *Ex parte Young* extends beyond review of "direct criminal enforcement authority." *Id.* But while that is true as far as it goes, Director Rausch raises a much different argument. In Director Rausch's view, the Offenders can sue him under *Ex parte Young*, but only to prevent him from using his own statutory power. *See* Open. 30; *Texas Alliance*, 28 F.4th at 672–73.

The district court should thus have limited its review to determining whether the statutes creating the publication rules violated the *Ex Post Facto* Clause.

## II. Tennessee's sex offender regulations do not violate the *Ex Post Facto* Clause.

The statutes that created the publication rules, and the other rules the Offenders seek to challenge, do not violate the Offenders' constitutional rights by imposing retroactive punishment. The Response attempts to muddy the proper analysis by straw-manning the Governor and Director's argument. But the Offenders cannot change the proper conclusion: the General Assembly has yet to pass a sex offender law that runs afoul of the *Ex Post Facto* Clause.

9

### A. The *Ex Post Facto* Clause applies to individual legislative acts, not whole chapters of code.

The Response's errors begin with a misreading of the Opening Brief. Governor Lee and Director Rausch have not argued that "the punitive effect of each provision of the" relevant Code chapter "should have [been] determined . . . separately" without looking at the "scheme as a whole." Resp. 37; *see id.* 48–50. Rather, the Governor and Director contend that the *Ex Post Facto* Clause restrains the "pass[age]" of specific "Law[s]," U.S. Const. art. I, § 10, cl. 1, not the composition of the whole regulatory "scheme," *see* Open. 31–35. The Offenders' counterarguments are thus inapposite in three critical respects.

*First*, the Governor and Director *do* urge the Court to look at the "scheme as a whole," Resp. 37, but only to determine whether any amendments were punitive in context. Indeed, an *ex post facto* statute must increase punishment after-the-fact, *see Collins v. Youngblood*, 497 U.S. 37, 41–42 (1990), and that "depends upon the intent of the legislature" that passed the statute into law, *Seling v. Young*, 531 U.S. 250, 269 (2001) (Scalia, J., concurring). The Court thus must consider the factual and legal backdrop of a legislative act before labeling it *ex post facto*.

10

An example helps illustrate the point. Assume the legislature passes Statute #1 in 1991, requiring convicted sex offenders to register on the first day of every quarter. Now assume the legislature passes Statute #2 in 2002, requiring convicted sex offenders to register on the *last* day of every quarter. Statutes #1 and #2 each independently require once-a-quarter registration, but their distinct legal backdrops make it possible that one — and only one — is punitive. Indeed, Statute #1 required once-a-quarter registration standing alone, but Statute #2 required once-a-quarter registration on *top* of the preexisting registration duty already imposed by Statute #1. What is more, Statute #2 effectively required offenders to register on consecutive days, which is much harder to justify as a purely regulatory rule.

A court could thus logically conclude that Statute #2 imposes punishment even if Statute #1 is a valid, nonpunitive regulation. The whole "regulatory scheme" matters to the analysis, but the two statutes do not stand or fall together. Viewed in isolation the statutes impose materially identical requirements. Viewed together, they impose a more burdensome and less sensible requirement that neither imposes independently.

As a result, Statute #2 may be punitive *only* because it followed Statute #1, and Statute #1 may be nonpunitive *because* it predates Statute #2.

*Second*, the Governor and Director do not dispute that the Tennessee Code was created by law, *see Keaton v. State*, 372 S.W.2d 163, 164 (Tenn. 1963), or that the legislature approves its revision, *see, e.g.*, 2023 Tenn. Pub. Acts ch. 49. Rather, they stress that both the initial codification and the "code bills" represent "no[n-]substantive" efforts to "integrate[] . . . public acts" into an "official compilation." *Id.* In other words, the Code organizes pre-existing statutes, *see id.*, and that also must guide the Court's analysis. Indeed, the fact that the Code compiles statutes guarantees that it will contain some provisions that are older than others, added after some events but before others. *Compare* Tenn. Code Ann. § 40-39-215, *with* 2008 Tenn. Pub. Acts ch. 1164, § 13 (adding what is now Tenn. Code Ann. § 40-39-215(a)), *and* 2022 Tenn. Pub. Acts ch. 1058 (adding what is now Tenn. Code Ann.§ 40-39-215(b)). It also makes some rules appear punitive only as a result of subsequent changes.

Again, an example helps illustrate how focusing on the Code, rather than specific legislative acts, can knock the *Ex Post Facto* Clause analysis off track. Recall Statutes #1 and #2 above, but now assume they have

12

been codified together as Code Section A(1) and A(2). A court looking only at Code Section A might conclude that it imposes retroactive punishment, specifically because it requires offenders to register on subsequent days. But unless the court also holds quarterly registration itself to be punitive, it has no constitutional basis for invalidating Section A as a whole. In fact, doing so would only effectively repeal Statute #1 despite Statute #1 lacking a constitutional defect. The court should instead recognize that Statute #2 was the one that imposed punishment by requiring end-of-the-quarter registration after Statute #1 already required beginning-of-the-quarter registration. As a result, only Code Section A(2) — codifying Statute #2 — should be held invalid.

*Third*, the Offenders' have not furthered their cause by citing cases viewing enactments "*in toto*." Resp. 48 (quoting *Dobbert v. Florida*, 432 U.S. 282, 294 (1977)). Those cases stress the point that a single amendatory enactment can both increase and decrease punishment, so a reviewing court must judge it by the balance of its terms. *See, e.g.*, *Dobbert*, 432 U.S. at 294. But the cases do not stand for the proposition that one punitive act can taint a multi-statute "scheme," and they otherwise have no bearing on the issues in this appeal.

13

A final tweak of the examples above helps illustrate what those cases actually say. Return to Statutes #1 and #2, but now assume Statute #2 *repeals* Statute #1 and *replaces* beginning-of-the-quarter registration with end-of-the-quarter registration. According to *Dobbert v. Florida*, 432 U.S. 282 (1977) and its progeny, Statute #2 is definitively *not* punitive for *Ex Post Facto* Clause purposes. The fact that it scrapped a quarterly reporting requirement while imposing a different quarterly reporting requirement means that the new "regulatory scheme" is no more burdensome than the one it replaced. *See Henderson v. Scott*, 260 F.3d 1213, 1217 (10th Cir. 2001); *Berrios v. United States*, 126 F.3d 430, 433 (2d Cir. 1997).

But the Governor and Director have never disputed that the regulatory burdens at issue here have gotten heavier overall. *See* Resp. 4–13. That does not mean the district court was right to focus only on the current "regulatory scheme" while ignoring the separate enactments responsible for bringing that "scheme" into being. To do so results in an analysis that strikes valid, constitutional legislation. That cannot be justified by invoking the *Ex Post Facto* Clause.

14

In sum, *only* discrete enactments can violate the Offenders' *Ex Post Facto* Clause rights, *see* Open. 31–35, and this Court has already decided that at least some of Tennessee's enactments did not, *id.* at 35–45.

## B. Binding and persuasive precedent supports the Tennessee legislature's enactments.

The Offenders' arguments make believe that *Does #1–5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), stands alone as the governing precedent. But in papering over prior and subsequent decisions, the Response errs in its assessment of the merits.

*First*, the Response errs by downplaying *Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir. 1999), and *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007). In the Offenders' view, those cases are all but meaningless because they reviewed Tennessee's regulations before the enactment of key additions. *See* Resp. 52–54. But those cases still tell this Court that some of the oldest regulatory terms must have been constitutionally imposed. Open. 38–39, 43–44. Contrary to the Offenders' belief, neither *Snyder* nor any other authority supports holding a valid statute unconstitutional when an amendment imposes retroactive punishment. *See id.* at 34–35. Were it otherwise, impermissible attempts to increase punishment would result in no punishment at all, and nothing supports that result. *See*

*Weaver v. Graham*, 450 U.S. 24, 36 n.22 (1981); *Vollmer v. City of Memphis*, 730 S.W.2d 619, 622 (Tenn. 1987).

*Second*, the Response misses the mark in its lengthy retroactivity argument. Resp. 39–47. Although the parties did not dispute retroactivity below, it is a purely legal issue that this Court has discretion to reach. *See McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002). And since it has been "thoroughly briefed" on appeal, addressing it would only aid the district court by providing guidance to it on remand. *Kerr ex rel. Kerr v. Commissioner*, 874 F.3d 926, 933 (6th Cir. 2017).

As for the argument's merit, the Offenders place undue weight on *Koch v. Village of Hartland*, 43 F.4th 747 (7th Cir. 2022). In yet another example of a circuit panel dismissing precedent as "dicta," *id.* at 753 n.3, the *Koch* majority missed how *Vartelas v. Holder*, 566 U.S. 257 (2012), serves to clarify *Weaver v. Graham*, 450 U.S. 24 (1981), rather than trying to supplant it. It is still generally true that a retroactive law "changes the legal consequences of acts [already] completed," *id.* at 31, but *Vartelas* shows how that description has always lacked precision.

Indeed, most regulations "change the legal consequences" of past acts by frustrating expectation-backed decisions with new, forward-

16

looking legal obligations and impositions. *See, e.g.*, *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302 (2002). What makes a "retroactive" law different is that it actually "target[s]" the past acts themselves, rather than addressing some "present" or future "danger." *Vartelas*, 566 U.S. at 271. The laws at issue here do the latter, not the former. *See* Open. 39, 44, 46.

*Third*, the Offenders' skin-deep "*Mendoza-Martinez*" analysis fails to show that Tennessee's laws are punitive. Courts generally agree that most forms of sex offender regulation share characteristics with traditional forms of punishment. *See Hope v. Commissioner*, 9 F.4th 513, 531–32 & n.10 (7th Cir. 2021). But like most regulations, the rules applied to sex offenders "differ[] in degree and type" from parole, public shaming, and banishment. *Id.* at 532 n.10; *see McGuire v. Marshall*, 50 F.4th 986, 1009 (11th Cir. 2022); *Millard v. Camper*, 971 F.3d 1174, 1182 (10th Cir. 2020). Indeed, punishment and non-punitive regulation both protect the public from future bad acts by restricting personal freedoms and distributing information. *See Smith v. Doe*, 538 U.S. 84, 102 (2003). Thus, "[a]ny initial resemblance to early punishments" has typically been dismissed as "misleading." *Id.* at 98.

17

It is no response for the Offenders to claim, in a passing footnote, that other courts have all faced "distinguishable" regimes. Resp. 55 n.6. The fact that *Shaw v. Patton*, 823 F.3d 556 (10th Cir. 2016), did not address "work restrictions" has no impact on its registration-rules analysis, Resp. 56 n.6. The fact that *United States v. W.B.H.*, 664 F.3d 848 (11th Cir. 2011), did "not examine geographic restrictions" has no impact on its publication-rules analysis, Resp. 56 n.6. And regardless, the Offenders do not even attempt to address *E.B. v. Verniero*, 119 F.3d 1077 (3d Cir. 1997); *Femedeer v. Haun*, 227 F.3d 1244 (10th Cir. 2000); *Hope v. Commissioner*, 9 F.4th 513 (7th Cir. 2021), or several other precedents discussing these same issues. More importantly, the Offenders never explain how the broader drafting of a single restriction — like preventing loitering around daycares and not just schools, *see* Resp. 57 — could render the entire "regulatory scheme" unconstitutional under the *Ex Post Facto* Clause.

In a similar vein, the Response fails to justify the district court's use of post-enactment evidence. *See* Open. 49–50. Although *Snyder* does rely on such evidence, its analysis indicates the court no more than assumed that course was proper. *See* 834 F.3d at 704–05. And "[w]hen

18

'[c]areful study and reflection' convince" this Court that "a [prior] case was decided" based on an erroneous "'assumption,'" the Court need not "'follow' the prior case." *United States v. Miller,* 34 F.4th 500, 505 (6th Cir. 2022) (quoting *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006)).  That is especially true where, as here, the point at issue has never garnered "full[] debate[]." *Id.* (quoting *Katz*, 546 U.S. at 363).

In engaging that debate here, the Offenders say only that "multiple amendments" to Tennessee law left the district court "no reason" to doubt it could consider "more recent information."  Resp. 66.  They cite no authority for that proposition, and that should come as no surprise.  The Offenders' view would effectively require legislators to *repeal* valid regulations that amass "scant" post-enactment "support."  *Snyder*, 834 F.3d at 704.  But hindsight evidence, like "recidivism rates," can be spun in multiple directions.  *Clark v. Gwyn*, No. M2018-00655-COA-R3-CV, 2019 WL 1568666, at *8 (Tenn. Ct. App. Apr. 11, 2019).  More importantly, the whole exercise strays from the question the court should be asking.

That question is whether "the law's 'nonpunitive purpose'" was in fact "'a sham or mere pretext.'"  *Hope*, 9 F.4th at 534 (quoting *Smith*, 538 U.S. at 103).  So long as the enacting legislature could have "rationally

19

conclude[d]" it was pursuing a valid aim, *Bredesen*, 507 F.3d at 1006, no post-enactment development can call its motives into question.

Indeed, "rational-basis review epitomizes a light judicial touch." *Tiwari v. Friedlander*, 26 F.4th 355, 361 (6th Cir. 2022); *see also Doe v. Settle*, 24 F.4th 932, 949 (4th Cir. 2022) (comparing the "effects" analysis to other forms of rational-basis review). "So long as [any] 'plausible' reason exists for the law," it "must stand, no matter how unfair, unjust, or unwise the judges may see it." *Tiwari*, 26 F.4th at 361. And because even "[a] legislature's 'rational speculation' . . . suffices," *id.* (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)), there is no place for post-enactment evidence in this case.

## III.   The district court erred by granting improper relief.

The Response does next to nothing to address the remedial issues. *See* Resp. 67–70. The Offenders apparently agree that the Governor and Director take aim at purely legal errors, as well as the fact that those errors are subject only to *de novo* review. *See id.*; *Digital Media Sols., LLC v. S. Univ. of Ohio, LLC*, 59 F.4th 772, 777 (6th Cir. 2023). And in three pages that reference almost no governing law, the Offenders all but concede that the remedies should not have been issued.

## A.    The sweeping injunction did more than necessary or equitable to remedy the Offenders' injuries.

While acknowledging the district court's obligation to compose a detailed order providing only necessary relief, *compare* Open. 52–54, *with* Resp. 67–68, the Offenders claim the district court did just that in this case, *see* Resp. 67–68.  They are wrong.

*First*, regarding the district court's decision to enjoin enforcement of the Code "as a whole," it is no defense to invoke Tennessee's "elision" jurisprudence.  *Id.* at 67.  Like federal law, Tennessee law directs reviewing courts to "sever[]" unconstitutional portions of an act by "elid[ing]" those portions and enforcing the law's surviving terms.  *Hunter v. Conner*, 277 S.W. 71, 77 (Tenn. 1925).  The point is to effectuate the intent of the legislature that passed the enactment at issue.  *See Gibson Cnty. Special Sch. Dist. v. Palmer*, 691 S.W.2d 544, 551 (Tenn. 1985); *see also* Open. 35 (citing *Moore v. Fowinkle*, 512 F.2d 629, 632 (6th Cir. 1975)).

Thus, while the Offenders correctly note that courts cannot "re-write" a legislative enactment by elision, Resp. 68 (citing *State v. Crank*, 468 S.W.3d 15, 29 (Tenn. 2015)), they are wrong to argue this justifies the injunction that issued below.  Governor Lee and Director Rausch are not asking for a statutory "re-write."  They are asking for the district

court to respect Tennessee's legislators by enjoining only what is "necessary" to protect the Offenders' rights. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1069 (6th Cir. 1998).

In this case, the Offenders' rights have not been violated by the "whole" of Tennessee's regulations. Resp. 67. If those rights have been violated at all, they have been violated through the "pass[age]" of one or more discrete "Law[s]" imposing retroactive punishment. U.S. Const. art. I, § 10, cl. 1. It is true that some enactments are only punitive because they add irrational, cumulative burdens on top of valid pre-existing obligations. *See supra* Arg. Part II.A. But that does not mean an improperly punitive enactment can somehow render earlier legislation unconstitutional. The truth is just the opposite: a constitutionally infirm amendment has no legal force and leaves the pre-existing "scheme" undisturbed. *See Crank*, 468 S.W.3d at 28–30; *In re Swanson*, 2 S.W.3d 180, 189 (Tenn. 1999); *Vollmer*, 730 S.W.2d at 622.

Indeed, there is a rich irony in the district court justifying its decision by declaring that "[l]egislating . . . is for legislators." *Does #1–9 v. Lee*, --- F. Supp. 3d ---, 2023 WL 2335639, at *21 (M.D. Tenn. 2023). Legislators passed the sex offender regulations upheld by this Court in

22

*Cutshall.*  Legislators passed the sex offender regulations upheld by this Court in *Bredesen.*  Legislators passed the Jacob Wetterling Act, the Adam Walsh Act, the KIDS Act, and all the complementary Tennessee laws that make up the "regulatory scheme."  Resp. 48.  It is no less legislative to prevent the State from enforcing *all* those laws than to prevent it from enforcing some of them.  Indeed, while claiming not to "legislate," the district court effectively *repealed* dozens of democratic enactments — at least as applied to these Offenders — without explaining how the *Ex Post Facto* Clause prohibited any one of them.

The court lacked the power to do that.  Assume, for example, the Offenders had actually proved that the bar on "impersonat[ing]" a "fictional . . . character" imposed retroactive punishment when it was added to pre-existing regulations.  Tenn. Code Ann. § 40-39-215(a)(1)(A); *see* 2008 Tenn. Pub. Acts ch. 1164, § 13.  That would not make the pre-existing regulations punitive; it would make the added provision unconstitutional.  *See* Open. 31–35; *supra* Arg. Part II.A; *Vollmer*, 730 S.W.2d at 622.  And it would not support voiding the entire amendment containing that provision, because the legislature explicitly stated the terms of that amendment were "severable."  2008 Tenn. Pub. Acts ch. 1164, § 14; *see*

*Fowinkle*, 512 F.2d at 632 (citing *Carr v. State ex rel. Armour*, 265 S.W.2d 556, 558 (Tenn. 1954)).  The court would thus have no legal or equitable basis for enjoining enforcement of the entire amendatory statute, much less the valid regulations passed prior to the unconstitutional provision. *See* Open. 54.

But the district court went even further than that in this case.  It set aside thirty years' worth of accumulated sex offender regulations without ever identifying even a single unconstitutional enactment.  *See Does #1–9*, 2023 WL 2335639, at *20; Open. 54.  That was an abuse of remedial discretion, and this Court should say so.

*Second*, the Offenders' attempt to defend the injunction only highlights how its terms lacked detail.  *See* Resp. 68.  According to the Response, Governor Lee and Director Rausch cannot "[]plausibl[y]" take issue with the injunction's wording because they "had no trouble implementing it."  *Id.*  The Offenders elaborate by saying what happened after the judgment: their "information" was "remov[ed] . . . from the registry," they were "issu[ed new] driver's licenses," the local "agencies" they report to were "notif[ied]," and they were given papers "on TBI letterhead . . .

confirming they have no obligation to comply" with Tennessee's sex of-fender regulations. *Id.*

But that list all but proves the injunction order's inadequacy. Even a court order saying simply "comply with the law" will prompt responsive action from a defendant wary of sanctions. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 616 (5th Cir. 2017). The Federal Rules require more precise orders that "inform the parties exactly what it is the Court expects of them." *S. Oh. Coal Co. v. United Mine Workers of Am.*, 551 F.2d 695, 711 (6th Cir. 1977). This relieves defendants of the need to "test their interpretation of" an injunction "through contempt proceedings." *Id.* And it is especially critical in cases against state officers, who have pre-existing duties to enforce democratically enacted legislation. *See Knop v. Johnson*, 977 F.2d 996, 1008 (6th Cir. 1992).

Indeed, the detailed list of actions the Offenders have identified was *not* included in the district court's orders. *See* Order, R.135 at 2721–22. Some of the actions — like issuing letters and driver's licenses — do not even flow from the TBI's statutory power. *See* Open. 30; *see also* Tenn. Code Ann. § 55-50-331 (granting the Tennessee Department of Safety power to issue driver's licenses). And the Offenders certainly do not

argue they got any practical relief from Governor Lee. *See* Resp. 68. Their supplemental brief, *see* Mot. Suppl., Appeal D.E. 22-1, only hammers home their misconceptions: regardless of how it was (rightly or wrongly) interpreted and "implement[ed]," *id.* at 5, the order did not meet the standards of federal injunctive relief.

*Third*, while "it is always in the public interest to prevent violation of a party's constitutional rights," Resp. 69 (quoting *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021)), the district court still erred by not balancing the broader equities, *see* Open. 56–57. As already mentioned, the court never identified what *enactment* violated the Offenders' rights or whether a more precise injunction would cure their constitutional injuries. *See supra* at 24. And "'courts of equity should pay particular regard for the public consequences [of] employing the extraordinary remedy of injunction,'" even when the party requesting relief has "shown irreparable injury." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23–24 (2008) (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)). Because fully exempting sex offenders from regulation may "jeopardize[] the safety of the" public, the "balance of equities" should have been given more than a "cursory" review. *Id.* at 26.

26

**B.    The district court's declaratory judgment is an inequitable advisory opinion.**

Finally, the Offenders argue the declaratory judgment was a valid means of restraining "[s]tate and local officials" who "enforce the [sex offender regulations] 'in active concert or participation with'" the named defendants.  Resp. 69 (quoting Fed. R. Civ. P. 65(d)(2)).  In fact, they claim it was necessary to avoid the "impractical[ity]" of fitting their case within *Ex parte Young*.  *Id.* at 70.  Again, they misread the law.

"Rule 65(d)(2) incorporates [a] common-law principle that . . . ensures . . . a defendant cannot 'nullify' an injunction 'by [acting] through aiders and abettors.'" *Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015) (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179 (1973)).  But the Rule does not negate the "fundamental" right of every person to "have his own day in court." *Havens v. James*, --- F.4th ---, 2023 WL 4982318, at *4 (2d Cir. 2023) (quoting *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996)).  Instead, an injunction may reach a nonparty for the purpose of restraining *a party*.  *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020).  The abettor can only violate the order if "'the party subject to the court's mandate commit[s] contempt,'" and "the nonparty acts to

27

benefit or assist" him in doing so.  *Havens*, 2023 WL 4982318, at *5–6 (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002)).

Those circumstances do not match this case.  The district attorneys who enforce the registration and child-access rules do not act "for the benefit of" Director Rausch.  *Id.* at *9.  Rather, they "act independently," *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13 (1945), to fulfill a separate duty to "prosecute . . . all violations" of criminal law, Tenn. Code Ann. § 8-7-103(1).  And their actions could not aid Director Rausch's exercise of his publication power, because nothing gives them the right or ability to operate the TBI's public website.  *See* Open. 30.

Rule 65(d)(2) thus cannot cure the jurisdictional flaws in the declaratory judgment.  When a plaintiff sues a state officer that does not enforce a challenged provision, an order addressing a nonparty "cannot suddenly make the plaintiff's injur[ies]" from that provision "redressable."  *Jacobson*, 974 F.3d at 1255.  And because a declaration aimed at unidentified "enforcers" of state law does not "resolve [an] 'actual controvers[y]'" between the Offenders and *these* defendants, *Whole Woman's II*, 142 S. Ct. at 532 (quoting *Muskrat v. United States*, 219 U.S. 346, 361 (1911)), issuing such a declaration was an abuse of equitable discretion.

Indeed, the issue is not that the injunction "preclude[d]" the declaration.  Resp. 70.  The issue is that the declaration expanded the bounds of the case.  The Offenders rightly invoked the district court's jurisdiction to review Director Rausch's publication authority, which he exercises centrally at the TBI, not through "active concert" with district attorneys. *See* Open. 30; *supra* Arg. Part I.B.  But the Offenders also wanted to challenge reporting and child-access restrictions, which the law gives force through the threat of criminal prosecution.  *See* Open. 30 (citing Tenn. Code Ann. § 40-39-208(a)).  It would have thus been both "[]practical" and "[]necessary" to do what other plaintiffs have done countless times, Resp. 70: name the relevant district attorney as a defendant and seek to enjoin *her* enforcement efforts, *see, e.g.*, *Friends of Georges, Inc. v. Mulroy*, --- F. Supp. 3d ---, 2023 WL 3790583, at *1 & n.7 (W.D. Tenn. 2023).

The Offenders took a different course here.  They cut the prosecutors out of the litigation and tried to make up for it through an advisory opinion that "plac[ed]" absent "officials on notice."  Resp. 70.  Such relief exceeded the district court's jurisdiction and equitable power.  This Court should not allow it to stand.

*    *    *

29

The Response makes one thing quite clear: the Offenders pin their hopes on *Does #1–5 v. Snyder*. That case is in their oral argument request. *See* Resp. xi. It is in their issues statement. *Id.* at 2. And it is invoked as "controlling precedent" throughout their discussion of the merits. *Id.* at 52.

It is also not hard to see why: the *Snyder* case was an outlier. *Compare Snyder*, 834 F.3d 696, *with McGuire*, 50 F.4th 986 (11th Cir.); *Settle*, 24 F.4th 932 (4th Cir.); *Hope*, 9 F.4th 513 (7th Cir.); *Millard*, 971 F.3d 1174 (10th Cir.); *Doe v. Cuomo*, 755 F.3d 105 (2d Cir. 2014); *United States v. Parks*, 698 F.3d 1 (1st Cir. 2012); *ACLU of Nev. v. Masto*, 670 F.3d 1046 (9th Cir. 2012); *Doe v. Miller*, 405 F.3d 700 (8th Cir. 2005); *Verniero*, 119 F.3d 1077 (3d Cir.). For that same reason, *Snyder* may warrant revisiting *en banc*. *See Vooys v. Bentley*, 901 F.3d 172, 184 (3d Cir. 2018).

But for now, the Court should recognize that *Snyder* is not this case. In this case, unlike *Snyder*, the defendants have challenged the Court's jurisdiction. *See* Open. Arg. Part I. And in this case, unlike *Snyder*, the defendants have put the remedies at issue. *See* Open. Arg. Part III. *Snyder*'s absence from the Offenders' response on those points is a silence that speaks volumes. *See* Resp. 30–39, 67–70. And as for the merits, this

appeal compels the Court to confront authorities and issues that do no more than "lurk in [*Snyder*'s] record" and could not "hav[e] been so decided" in *Snyder* "as to constitute precedent[]." *Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 559 (6th Cir. 2004)).

This Court should appropriately distinguish *Snyder*. *See* Open. 40–42, 45, 48, 50, 54. It should recognize that the district court's limited jurisdiction only allowed it to review Director Rausch's statutory powers, *see supra* Arg. Part I, and it should uphold those powers as constitutional under *Cutshall*, *Bredesen*, and the persuasive reasoning of other circuits, *see supra* Arg. Part II. In short, the Court should reverse the district court's order and direct a judgment against the Offenders.

## CONCLUSION

The Court should direct the district court to dismiss Governor Lee and enter judgment in Director Rausch's favor.

31

Dated: August 28, 2023                    Respectfully Submitted,

                                          Jonathan Skrmetti
                                            *Attorney General & Reporter*

                                          Andrée Sophia Blumstein
                                            *Solicitor General*

                                          /s/ Gabriel Krimm
                                          Gabriel Krimm
                                            *Assistant Solicitor General*
                                          State of Tennessee
                                          Office of the Attorney General
                                          P.O. Box 20207
                                          Nashville, TN 37202
                                          Gabriel.Krimm@ag.tn.gov
                                          (615) 532-5596
                                          *Counsel for Governor Lee*
                                            *& Director Rausch*

32

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's type-volume limitations because it contains 6,490 words, excluding portions omitted from the Court's required word count.

This brief complies with the Court's typeface requirements because it has been prepared in Microsoft Word using fourteen-point Century Schoolbook font.

*/s/ Gabriel Krimm*
Gabriel Krimm

## CERTIFICATE OF SERVICE

On August 28, 2023, I filed an electronic copy of this brief with the Clerk of the Sixth Circuit using the CM/ECF system.  That system sends a Notice of Docket Activity to all registered attorneys in this case.  Under 6 Cir. R. 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

*/s/ Gabriel Krimm*
Gabriel Krimm